**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **WILLIE FLOOD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **NO.  06 C 2980** |
| **vs.** | ) | |
| | ) | |
| **CHICAGO POLICE OFFICER KEVIN** | ) | **JUDGE GOTTSCHALL** |
| **CAREY, et al.,** | ) | |
| | ) | **MAGISTRATE MASON** |
| **Defendants.** | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW AND ARGUMENT IN
OPPOSITION TO DEFENDANT, CITY OF CHICAGO'S MOTION FOR SUMMARY
JUDGMENT**

NOW COMES the Plaintiff, by and through his attorneys, the LAW OFFICES OF
JEFFREY J. NESLUND, and submits the following Memorandum of Law and Argument in
Opposition to the Defendant, City of Chicago's, Motion for Summary Judgment.  For the reasons
stated herein, there are disputes of material fact which require the denial of Defendants' motion.
In particular, there are questions of fact regarding whether Defendant Kevin Carey was acting
within the scope of his employment as a Chicago Police Officer when he pursued the Plaintiff,
displayed his badge during the car chase and had the Plaintiff arrested.   Defendant Carey
testified he observed the Plaintiff commit multiple traffic violation and point a semi-automatic
hand gun at him while at a stop light.  Carey further testified he pursued the Plaintiff, displayed
his badge, announced his office verbally and displayed his weapon in an attempt to effectuate the
Plaintiff's arrest which occurred immediately in Logan Square after the chase.

The Plaintiff denies he committed any of the crimes described by Defendant Carey.  Such
a factual dispute can only be resolved by a trier of fact.  Therefore, Defendant, City of Chicago's,
motion for summary judgment must be denied.

In addition, the Seventh Circuit has held that the issue of indemnity by the City for a police officer's alleged misconduct is premature until the liability issues have been resolved. *Doe v. City of Chicago*, 360 F.3d 667 (7th Cir. 2004). A jury may reject Plaintiff's evidence and reject his claims, in which case the issue of the City's vicarious liability will be moot. As such, Defendant City of Chicago's motion is premature and should be denied.

## INTRODUCTION AND FACTUAL BASIS FOR PLAINTIFF'S CLAIMS

Plaintiff incorporates into his Memorandum of Law and Argument in Opposition to Defendant, City of Chicago's, Motion for Summary Judgment, his Response to Defendant's Rule 56.1(a)(3) Statement of Uncontested facts, and Plaintiff's Rule 56.1(B)(3)(c) Statement of Additional Facts.

On May 5, 2006, at approximately 4:15 a.m. the Plaintiff and Defendant Officer Carey were driving northbound on Western Avenue. Defendant Carey, an off-duty Chicago police officer, was on his way home after spending the night at a friend's house following a night of drinking beer at an establishment called the Rhino Bar. Defendant Carey testified that when he woke up at his friend's house, he felt fine and capable of driving. (Pltf. Stm. Facts No.2, 3, and 22).

Defendant Carey testified that as he was driving home, the Plaintiff's car cut him off and swerved into his lane of traffic. Defendant Carey pulled up to the Plaintiff's car at a stop light at Western and 71st Street and claims the Plaintiff pointed a semi-automatic pistol in his direction and then drove through the red light. (Pltf. Stm Facts No. 4-7). Carey testified that he followed the Plaintiff in order to assist or effectuate the Plaintiff's arrest. (Pltf. Stm Facts No. 8,12 and 19). The Plaintiff denies that he ever cut off Defendant Carey or ever displayed a handgun. (Deft. Stm Fact No. 17). In direct contradiction to Defendant Carey's testimony, the Plaintiff

testified that Defendant Carey pointed a handgun in his direction and he called 911. (Deft. Stm Facts No. 29 and 31).

Defendant Carey followed the Plaintiff onto the Dan Ryan Expressway. Carey testified that he pulled even with the Plaintiff and displayed his Chicago Police badge to the Plaintiff for approximately 20 seconds in an effort to pull him over and effectuate his arrest. (Pltf. Stm Facts No. 10-12). According to Carey, the Plaintiff accelerated and tried to speed away after Carey displayed his badge. (Pltf. Stm Facts No. 13). The Plaintiff denies that Defendant Carey ever displayed his badge while they were on the Expressway.

The chase continued off the Dan Ryan Expressway at Lawrence Avenue and the cars came to a halt at Logan Square. Defendant Carey testified he exited his vehicle, yelled "stop police" at the Plaintiff and pointed his handgun at him as the Plaintiff ran to the rear of a Chicago police wagon. (Pltf. Stm Facts No. 16 and 17). Carey testified he yelled "he's got a gun" in fear for the safety of his fellow officers. Carey further testified that he exited his squad care and announced his office with his handgun in order to effectuate the arrest of the Plaintiff. (Pltf Stm Facts No. 18 and 19). The Plaintiff was immediately arrested by assisting officers, placed in handcuffs and transferred to the 14th Chicago Police District. (Pltf. Stm of Fact No. 23 and Deft. SF No. 42). While he was handcuffed in an interview room, the Plaintiff observed Defendant Carey walking around the station drinking coffee. (Pltf Stm Facts No. 24).

Ultimately, Defendant Carey was charged with Driving Under The Influence of Alcohol and Aggravated Assault. Defendant Carey was found to have a blood alcohol level of .145. On August 6, 2009, Defendant Carey pled guilty to the D.U.I. and was found not guilty of the Aggravated Assault following a bench trial before Cook County Circuit Court Judge Thomas Lyons. (See Plaintiff's Exhibit B).

## ARGUMENT

### I.     Standard For Summary Judgment.

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c);  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007) (citing *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986).  At the summary judgment stage it is not for the court to weigh evidence or to determine the credibility of testimony.  *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).  When scope of employment is at issue, summary judgment is not favored under Illinois law because it is a question of fact.  Landrus v. Eagle Wings, Inc., 236 Ill. App.3d 771 (Ill. Ct. App. 1992).

### II.     Defendant City of Chicago's Motion for Summary Judgment Should be Denied Because it is Premature to Resolve Indemnity Before Liability.

The Defendant City of Chicago's Motion for Summary Judgment should be denied because it is a premature attempt to resolve the issue of indemnity before any finding of liability. The Seventh Circuit has "warned repeatedly against trying to resolve indemnity before liability." *Fireman Fund's Insurance Company v. Amstek Metal, LLC*, 208 U.S. Dist. LEXIS 758, 79 (N.D. 2008) citing *Doe v. City of Chicago*, 360 F.3d 667, 672 (7th Cir. 2004).

In *Doe*, an individual filed civil right violations pursuant to 42 U.S.C. Section 1983 against the City of Chicago and a police officer.  The Seventh Circuit reversed the District

Court's ruling that granted the City's motion for summary judgment on the claim of misconduct under respondeat superior. The *Doe* court held :

> "the District Court jumped the gun when she entered a final, appealable judgment on *Doe's* claim against the City. We have warned repeatedly against trying to resolve indemnity before liability. (citations omitted) This case illustrates the inadvisability of the practice. The issue of the City's responsibility for the torts of its police officers is a difficult one that the District Court should not have attempted to resolve before the actual facts bearing on the issue were determined." 360 F.3d at 672, 673.

The *Doe* court also noted that "the proposition that scope of employment should be interpreted more broadly when the employee is a police officer has yet to be considered by the Supreme Court of Illinois, but it has a footing in other jurisdictions and may well be the waive of the future." (citations omitted) The Seventh Circuit further explained in *Doe*:

> "the difference between [a police officer] and other intentional tort feasors is slight. The situation of a police officer, however, is significantly different from that of a meter reader. The officer is armed, has authority to arrest, that is considerably broader than the authority of a private person to make a 'citizen's arrest,' has access to all sorts of personal information, is an authority figure trained to develop and project an intimidating aura, and may seem to be above the law. Indispensible to law and order, he is also an inescapably a dangerous instrumentality." Id. p. 671 and 672.

Similar to the situation in *Doe*, Defendant City of Chicago is seeking to have this Court resolve the issue of indemnity before there has been a finding of liability. For the same reasons articulated by the Seventh Circuit in *Doe*, Defendant's motion should be denied as a premature attempt to the issue of indemnity before any issues of liability against Defendant Carey have been resolved.

**III. A Material Issue of Fact Precluding Summary Judgment Exists as to Whether Defendant Kevin Cary was Acting within the Scope of his Employment with the Defendant City of Chicago.**

Defendant's motion must be denied because Defendant Carey and Plaintiff present conflicting accounts of the events which can only be resolved by a jury. Defendant City of

Chicago cannot establish, as a matter of law, that no jury could find Defendant Carey was not within the scope of his employment with the City of Chicago when he pursued the Plaintiff, displayed his badge, verbally announced his office and had him arrested.

A police officer's acts are not under color of law unless they are related to the performance of police duties. *Gibson v. Chicago*, 910 F.2d 1510 (7th Cir. 1990). Whether a defendant was on or off duty does not resolve the question of whether he acted under color of law. *Gibson*, 910 F.2d at 1517. The essential inquiry is whether the defendant's actions related in some way to the performance of a police duty. Id. Off-duty police officers who display guns, badge, and identify themselves as police officers during unprovoked assaults are acting under of law. *United States v. White*, 2003 U.S. App. LEXIS10868 (7th Cir. 2003) citing *Davis v. Murphy*, 559 F.2d 1098 (7th Cir. 1977).

Defendant, City of Chicago, argues that Defendant Carey's actions "did not relate to the performance of his police duties in any respect whatsoever." (See Defendant's Motion ["Def's Mtn."] p. 3). However, the City ignores Defendant Carey's deposition testimony in which he claims the Plaintiff commit numerous traffic violations and point a semi-automatic pistol in his direction. Defendant Carey repeated testified that he pursued the Plaintiff in an attempt to effectuate his arrest. The fact that the Plaintiff denies he committed any traffic violations or pointed a pistol at Defendant Carey requires that a trier of fact resolve these fundamental factual disputes.

Germane to Officer Carey's scope of employment, General Order 92-03, addressing the Chicago Police Department's policy concerning weapons, provides in pertinent part:

> Nothing in this policy statement is to be construed as diminishing a sworn member's responsibility to take appropriate police action, which can be as little as summoning the police for help, when observing a crime in progress.

(See Defendant's Exhibit G, G.O. 92-03, ¶ III(C)).  Significantly, the requirement that Officer Carey take action to enforce the law when a crime is committed in his presence is not limited in this General Order to his duty station or his duty hours.  It has been held that any action taken by a police officer to enforce the law, even in his official off-duty hours, falls within the performance of his duties as a police officer.  *Brown v. King*, 328 Ill. App. 3d 717, 767 N.E.2d 357, 262 Ill. Dec 897 (1st Dist. 2001); *Gaffney v. City of Chicago*, 302 Ill. App. 3d 41, 706 N.E.2d 914, 236 Ill. Dec. 40 (1st Dist. 1999); *Banks v. City of Chicago*, 11 Ill. App. 3d 543, 297 N.E.2d 343 (1st Dist. 1973).

*Banks* involved an off-duty Chicago Police Officer who shot and killed the decedent in a restaurant after the decedent had voiced obscenities at the officer and pointed a gun at him. *Banks*, 297 N.E.2d at 346.  In a suit by the decedent's estate seeking indemnification from the City for a judgment against the officer, the City argued that the officer was not acting within the scope of his employment responsibilities at the time of the shooting.  Id. at 347.  The court observed that the officer reacted by calling out the warning "halt, police" and by then firing his own service revolver when it appeared that he was about to be fired upon.  Id. at 349.  Of note, the court found that even though his acts could have been construed as self-defense, the acts were still performed as fulfillment of his obligations as a police officer.  Id. at 349.  In affirming judgment for the Plaintiff and holding that the police officer had been acting to enforce the law, the Illinois Appellate Court made the following observations:

> It is true that his being considered "on-duty" at all hours of the day and night does not result in all of his acts being deemed to have been taken in the performance of his duty as a police officer. . . (h)owever, since he is always obligated to prevent the commission of crimes in his presence, any action taken by him toward that end, even in his official off-duty hours, falls within the performance of his duties as a police officer.

Id. at 349.

7

The *Brown* case involved an off-duty sheriff's deputy sued for willful and wanton conduct and negligence by a motorist who was shot by the deputy while trying to flee the scene of a traffic accident.  *Brown*, 328 Ill. App. 3d at 720, 767 N.E.2d at 359.  The deputy pled guilty to the criminal charge of aggravated battery.  Id.  In the civil case the Defendant argued, as here, that the deputy was outside the scope of his employment as a matter of law because he was off-duty.  Id.  In reversing the trial court's dismissal of all claims, the appellate court held:

> Case law, however, supports Plaintiff's contention that an off-duty officer may often be found to be acting within the scope of his employment . . . The fact that King, a law enforcement officer was off-duty at the time of the incident does not establish, as a matter of law, that he was acting outside the scope of his employment.

Id. at 722, 367.

The *Gaffney* case involved a wrongful death action filed by the estate of a partygoer who was shot and killed at a police officer's home by his son, using the officer's negligently stored service weapon.  *Gaffney*, 706 N.E.2d at 916.  The City argued that the officer's weapon storage at home was not an act within the scope of his employment.  Id.  In reversing judgment notwithstanding the verdict for the City, the court cited with approval the following statement by Professor Keeton on scope of employment:

> The term, "scope of employment" has been characterized as a "highly indefinite phrase" which "refers to those acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it that they may be regarded as methods, even though quite improper ones, of carrying out the objections of the employment."

Id. at 919 (citing W. Keeton, Prosser & Keeton on Torts, § 70 at 502 (5th ed. 1984)).  In finding that an existing question of fact concerning scope of employment prohibited the entry of a judgment for the City, the court made the following observations about the job responsibilities of the police officer:

> With respect to emergencies, Croker was "on call" 24 hours a day. It is not unreasonable to conclude that the time and space of Croker's employment are unlimited with respect to actions incidental to his response to an emergency, just as they are with respect to the requirement of his employment that he respond to an emergency.

Id. at 922.

Just as in *Gaffney*, *Banks* and *Brown*, Officer Carey's conduct in attempting to enforce the law falls within the scope of his employment. At a minimum, a question of fact exists on this issue, precluding summary judgment in this case.

## IV.     Case Law Relied Upon by the City of Chicago as a Basis for Summary Judgment is Distinguishable From the Instant Case.

The City's reliance on *Parrilla-Burgos*[1], *Hill*[2], *Rivera*[3], *Wolf*[4] and *Luna*[5] as a basis for summary judgment is misplaced. The City cites *Wolf*, *Parrilla-Burgos* and *Hill* to support their argument that this Court should disregard Officer Carey's statements that he announced his office on the issue of agency. The City's argument is without merit as the facts of *Wolf* , *Parrilla-Burgos* and Hill are clearly distinguishable from the instant case.

In *Wolf* a driver's estate brought a wrongful death action against the City, a police officer, and another motorist who was the officer's fiancé. The facts, vastly distinguishable from the instant case, are the following: the fiancé, while intoxicated, drove her car through a store window; the defendant officer abetted her escape from the crash site before arrival of the investigating police; and while trying to secure his own disappearance, the defendant officer was involved in a fatal head-on collision with the plaintiff's decedent.

---

[1] *Parrilla-Burgos v. Hernandez-Rivera*, 108 F.3d p. 445 (1st Cir. 1997).
[2] *Hill v. Barbour*, 787 Fd.Supp. 146 (N.D. Ill. 1992).
[3] *Rivera v. City of Chicago*, 2005 WL 2739180.
[4] *Wolf v. Liberis*, 153 Ill. App. 3d 488, 505 N.E.2d 1202, 106 Ill. Dec. 411 (1987).
[5] *Luna v. Meinke*, 844 F.Supp. 1284 (N.D. 1994).

The appellate court, properly recognizing the complete absence in the record of any evidence that the defendant was enforcing the law or performing any police service, ruled that the officer's statement to bystanders that he was "on the job" was insufficient to establish agency. From this ruling, the City argues that a putative agent's statements are never admissible on the issue of agency. On the contrary, the following language of the appellate court in *Wolf* concerning the defendant officer's statement that he was "on the job" makes it abundantly clear that such a statement is inadmissible only when it is the sole evidence supporting agency:

> In our opinion that remark, <u>standing alone</u>, does not bring his subsequent conduct within the scope of his employment. The determinative factor is his conduct.

*Wolf v. Liberis*, 106 Ill. Dec. at 415 (emphasis added).

In the instant case when one considers Officer Carey's statements on the existence of agency in conjunction with the following evidence contained in the record before this Court, it is clear that a question of fact exists mandating denial of the City's Motion for Summary Judgment: that a crime was being committed by the Plaintiff in Officer Carey's presence; that he was required by his employment to take action to prevent the crime; that Carey displayed his badge, identified himself as a police officer, and yelled to his fellow officers that Plaintiff had a gun; and that the Plaintiff was subsequently arrested after the case.

In *Parrilla-Burgos*, the First Circuit found that the defendant police officer was not in the scope of his employment when he shot and killed plaintiff's decedent during a fight outside of the bar. The Court found that although the defendant's comments to patrons at the bar that he was there to "keep the peace" and his display of his police identification ***supported*** an inference that the defendant was acting under the pretense of law by purporting to act in his official capacity. However, the Court concluded that the agreement by the Plaintiff to go outside the bar and fight the Defendant precluded any Section 1983 liability:

"the final interchange between Galletti and Hernandez prior to their going outside the bar dominates any characterization of the events that evening. Both parties agree that at a point just before Galletti's death, he invited Hernandez outside to settle their differences in a fight. Hernandez accepted. From the time the two left the bar until Hernandez shot Galletti, Hernandez made no further pretense that he was acting as a peace officer. Whatever pretense Hernandez may have made to be acting in his official capacity by showing his identification and stating he was keeping the peace ended when the two agreed to fight it out." *Parrilla-Burgos*, 108 F.3d at 450.

In stark contrast, the record in the instant case contains ample evidence from Officer Carey that he was within the scope of his employment and was acting under the authority of his badge and his office as a Chicago Police Officer in attempting to arrest the Plaintiff for pointing a semi-automatic pistol at him as well as various traffic violations during the pursuant.

The City also cites *Hill* to support the position that even if Defendant Carey announced that the "police" it does not mean his actions were under color of law. (See Def's Mtn. p. 6). The City argues that "a review of Carey's entire conduct reveals that Carey's action resembled those of an angry, intoxicated motorist who wanted to settle a personal score with Plaintiff." Id. The City's argument is without merit.

In *Hill*, an off duty Cook County Deputy Sheriff assigned as a bailiff to Juvenile Court, shot an intruder who ran from his garage. The defendant yelled "Sheriff's Office" right before he fired his personal weapon at the intruder. The District Court found that the defendant's announcement of "Sheriff's Office" was insufficient to make his actions under color of State law because he was out of uniform, off duty, carrying a personal weapon while protecting his own property. *Hill*, 787 F.Supp. at 150. The Court found that the defendant was not engaged in an activity related to his status as a police officer and was acting as an ordinary citizen protecting his property and life. Id. The Court concluded that "the defendant's action were not in any way

related to his official duties as a courtroom bailiff but were those of a private individual." Id. at 149.

Contrary to the defendant in *Hill*, Defendant Carey testified that he pursued the Plaintiff, displayed his badge, announced his office and pointed his weapon at the Plaintiff in order to effectuate his arrest and warn his fellow officers that he believed the Plaintiff had a gun.  The pursuit and arrest of the Plaintiff did not take place on Carey's private property, but on the streets of Chicago.  The City further ignores the fact that Plaintiff was immediately arrested at Logan Square and brought to the 14th District in custody.  According to Defendant Carey, all these actions were taken, not as a personal individual with a beef or score to settle, but as a sworn police officer fulfilling his duty and obligation to arrest a perceived criminal.

Likewise in *Luna*, the District Court found the off-duty Defendant officer was not authorized to issue citations for traffic code violations in the Village of Skokie or patrol interstate freeways.  The Court found the defendant officer's duties were limited in scope to driving or protecting the Mayor of Chicago.  844 F.Supp. at 1288.  However, the plaintiff in *Luna* was never arrested, but rather assaulted by the Defendant on the interstate after her pulled over.  Contrary to *Luna*, Defendant Carey was attempting to arrest a perceived criminal who had pointed a semi-automatic gun in his direction and committed multiple traffic violations.  Unlike *Luna*, a reasonable person may conclude that Carey was acting within the scope of his employment as a Chicago Police Officer when he pursued the Plaintiff and had him arrested.

The City cites *Rivera* in support of their argument that "Carey's actions of chasing Plaintiff's vehicle throughout Chicago were also personal, as during that chase, Carey pointed his personal weapon on Plaintiff and did not follow a single police rule or regulation in engaging, continuing or ending that vehicle chase." (See Def's Mtn. p. 8).  In *Rivera*, the defendant officer

posed as a police officer for the purpose of stealing drugs and money. Contrary to the facts of *Rivera*, a question of fact exists in the instant case as to whether Defendant Carey followed the Plaintiff out of a "personal beef" or as a police officer attempting to effectuate the arrest of a perceived criminal. The City against ignores Defendant Carey's testimony that he was trying to effectuate the arrest of the Plaintiff for various crimes, including pointing a semi-automatic handgun in his direction. The City also ignores that Plaintiff was immediately arrested by other Chicago Police Officers at the scene and brought to the 14th District.

**V.     The Fact that Defendant Carey's Conduct was Reckless, Outrageous or Violated the Department's Rules and Orders, Does Not Mean His Actions were Outside the Scope of His Employment.**

The City argues that "none of Carey's actions were in conformance with police procedures" (See Def's Mtn. p. 3-4). The City further argues that Carey's conduct was "reckless, irresponsible and an appalling departure from acceptable conduct such that it falls outside the scope of his employment as a Chicago Police Officer." (See Def's Mtn. p. 15). However, the fact that Carey's conduct may in fact have been reckless, irresponsible and appalling, does not necessarily mean it fell outside the scope of his employment as a police officer. On the contrary, the Illinois Legislature has clearly expressed its intent that an officer's conduct be compensable by the City for willful and wanton conduct. Officer Carey is liable under the Local Government Tort Immunity Act for damages caused by willful and wanton conduct in his execution or enforcement of the law. See 745 ILCS 10/2-202. This Act, further requires the City of Chicago to pay all tort judgments for compensatory damages for which Officer Carey, while acting within the scope of his employment, becomes liable. See 745 ILCS 10/9-102.

The fact a jury may find that Officer Carey's conduct reckless, irresponsible, appalling, and in violation of police standards is probative of and an element of the willful and wanton nature of that conduct. Evidence of such appalling misconduct is also probative of Plaintiff's claim for punitive damages under Plaintiff's 1983 claims. To hold otherwise and embrace the City's argument would subvert the Illinois State Legislature's intent to impose liability on willful and wanton misconduct and the purpose of punitive damages in a Section 1983 law suit. As such, Defendant, City of Chicago's, motion must be denied.

## CONCLUSION

Viewing the record with all reasonable inferences drawn in favor of the non-moving part of the Defendant, City of Chicago's motion for summary judgment must fail. The Defendant's motion and memorandum are a premature attempt to resolve indemnity before liability and ignore a number of material factual disputes, in particular the version of events offered by Defendant Officer Carey which directly contrast with the Plaintiff's version of events as to what transpired during the pursuit. Such factual disputes can only be resolved by a trier of fact.

A reasonable jury could find that Defendant Carey's actions were not those of a private individual but related to the performance of his police duties as a Chicago Police Officer. Based on the argument and authority outlined above, and as further set forth in Plaintiff's Response to Defendant's Rule 56.1(a)(3) Statement of Uncontested facts, and Plaintiff's Rule 56.1(B)(3)(c) Statement of Additional Facts, there are clear issues of material fact from which a reasonable jury could find Defendant Carey was acting in the scope of his employment as a Chicago Police Officer. Accordingly, Plaintiff respectfully requests this Honorable Court enter an order denying Defendant, City of Chicago's motion for summary judgment.

Respectfully submitted,

14

/s/ Jeffrey J. Neslund
JEFFREY J. NESLUND
Attorney for Plaintiff

Jeffrey J. Neslund
Law Offices of Jeffrey J. Neslund
150 North Wacker Drive, Suite 2460
Chicago, Illinois 60606
(312) 223-1100