UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WILLIE FLOOD, )
 )
        Plaintiff, )
 ) Case No. 06 C 2980
        v. )
 ) Judge Joan B. Gottschall
KEVIN CAREY and the CITY OF )
CHICAGO, )
 )
        Defendants. )

## **MEMORANDUM OPINION & ORDER**

Plaintiff Willie Flood filed suit against the City of Chicago ("the City") and Kevin Carey, a Chicago police officer, alleging that Carey and the City violated his Fourth and Fourteenth Amendment rights; in addition to his 42 U.S.C. § 1983 claims, he also brings a number of state law tort claims.[1] The City has moved for summary judgment on all counts. For the reasons stated below, the court grants in part and denies in part the City's motion.

### **I. BACKGROUND**

At about 4:15 a.m. on May 5, 2006, Flood left his home to go to work in Rosemont, Illinois.[2] As he turned his car from 79th Street onto Western Avenue, he noticed another car swerving across the lane. That car was driven by Chicago police officer Carey. At that point, Carey (who worked during the day as part of the City's 9th District bike team) had been off duty for over nine hours. While the parties dispute

---

[1] Flood initially named "other unknown or unnamed individuals or corporations" as defendants, but they were voluntarily dismissed on March 10, 2009. (*See* ECF No. 70.)

[2] Unless otherwise noted, the facts set forth herein are undisputed or have been deemed admitted due to violations of the Local Rules. *See* L.R. 56.1.

whether Carey was leaving directly from a bar or from his friend's house, there is no dispute that he had been drinking. In fact, when Carey submitted to a breathalyzer test hours later, his blood alcohol content was 0.145.

Carey—who was out of uniform, driving his own personal vehicle, and carrying his personal firearm—pulled up next to Flood's car at a stoplight on 67th and Western. At this point, the stories diverge. According to Carey, Flood had swerved in front of him and cut him off, causing Carey's phone to fall underneath the driver's seat. Carey pulled alongside Flood's vehicle to chastise Flood's driving, and Flood pointed a semi-automatic pistol at Carey, then ran the red light. Carey followed Flood at a safe distance in order to effectuate Flood's arrest for the traffic violation and for pointing a gun at him. Carey eventually pulled even with Flood and displayed his police badge, at which point Flood sped away. Flood ran more stoplights, and when he finally stopped behind a police wagon, Carey jumped out of the car with his gun, identified himself as a police officer, and told Flood to get on the ground. Carey yelled to the other officers that "he (Flood) has a gun." Flood was handcuffed and taken to the 14th District.

By contrast, Flood claims that he never cut Carey off, nor did he pull a gun. Instead, Flood testified that when Carey pulled up next to his car at 67th and Western, Carey was visibly drunk. Flood pulled away, and Carey continued to drive right by his side—when Flood sped up, Carey would speed up, and when Flood slowed, Carey would do the same. After Flood successfully passed Carey, Carey followed Flood's car so closely that the vehicles almost touched. They both got on the expressway, and after Flood saw Carey point a gun at Flood's head, Flood called 911. He reported that a "drunk" "white guy" was following him. The operator attempted to direct him to a police

2

station, but Flood was unable to follow the directions. He got off the expressway and drove through some red lights; when he saw a police wagon, he pulled directly behind it, jumped out of his car and told the officers that a guy was chasing him with a gun. Carey had also exited his car and pointed a weapon at Flood. Carey identified himself to the other officers as police. The officers told Flood to get down and instructed Carey to drop his weapon; both were then taken to the 14th District police station.

Flood was eventually released without being charged with any criminal offense. Carey was charged with driving under the influence and aggravated assault. He pleaded guilty to driving under the influence, but after a bench trial in the Circuit Court of Cook County, he was found not guilty of aggravated assault.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, the court will grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In particular, the court will grant a motion for summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

At the summary judgment stage, "a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party." *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). "A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine

whether there is a genuine issue of triable fact." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). Doubts about the existence of a material fact "should be resolved in favor of the nonmoving party and summary judgment ought to be denied." *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994).

### III. ANALYSIS

Flood's amended complaint sets forth ten counts against Carey and the City. In Counts I-III, Flood claims Carey violated his Fourth and Fourteenth Amendment rights; in Count IV, Flood appears to allege both § 1983 and various state law tort claims[3] against Carey and the City; Count V states a § 1983 *Monell* claim against the City based upon its "customary practices," *see Monell v. Department of Social Services*, 436 U.S. 658 (1978); Count VI alleges an assault claim against the City; Count VII alleges a negligence claim against the City based upon its failure to provide adequate 911 emergency services; Count VIII alleges that the City intentionally inflicted emotional distress upon Flood; Count IX alleges that Carey assaulted Flood; and Count X alleges that Carey intentionally inflicted emotional distress upon Flood.

The City has moved for summary judgment on all claims, including those that appear to be pleaded solely against Carey. Carey has not filed his own motion for summary judgment. Of course, "where one defendant succeeds in winning summary judgment on a ground common to several defendants, the district court may also grant judgment to the non-moving defendants, if the plaintiff had an adequate opportunity to argue in opposition," *see Acequia, Inc. v. Prudential Insurance Co. of America*, 226 F.3d

---

[3] This count and others include a laundry list of state law torts, including unlawful assault, arrest, search, seizure, and confinement; Flood also alleges that he suffered great pain and mental anguish (in other counts, he uses the term "emotional distress"). Thus, reading Flood's complaint liberally, it would appear that he is asserting claims for false arrest, false imprisonment, assault, and intentional infliction of emotional distress.

798, 807 (7th Cir. 2000), or "if granting the motion would bar the claim against those non-moving defendants," *see Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 384 (7th Cir. 2008). Here, the City's argument with respect to § 1983 liability is predicated upon its claim that Carey was not acting under color of state law. If true, Flood could not prevail against either the City or Carey on these claims. *See Cruz v. Safford*, 579 F.3d 840, 844 (7th Cir. 2009) (noting that to prevail on a claim under § 1983, a plaintiff must establish that the defendant was acting under color of state law). Thus, the court has considered the City's motion with respect to Counts I-IV.

As to the tort claims, however, the City argues that Carey's acts were so reckless and outrageous that they fell outside the scope of his employment, and so the City cannot be held vicariously liable for his behavior. If true, this conclusion would not bar the tort claims against Carey—he could still be personally liable for his acts. Moreover, the motion as presented did not provide Flood with an opportunity to address these issues. To the extent that the City seeks summary judgment on the tort claims against Carey (part of Count IV, and Counts IX and X), the court denies the motion outright.

**A. Conflicts Between Flood's and Carey's Testimony**

As a preliminary matter, the court must address a somewhat unusual situation: the City attempts to short-circuit the summary judgment process by taking Flood's testimony as true and then attempting to demonstrate that Flood cannot prevail based on those facts. Flood responds by pointing to Carey's testimony to show that there is a material dispute, and the City then complains that Flood cannot create a genuine issue of material fact by pointing to evidence that contradicts his own testimony, citing the Eighth Circuit's *Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995), in support. In *Prosser*, the Eighth

Circuit expanded a commonly accepted principle—the "sham affidavit" rule, which states that a plaintiff does not create a genuine issue of material fact by submitting an affidavit that contradicts his own earlier testimony—to encompass situations in which "a plaintiff attempts to avoid summary judgment by proffering testimony from another person that contradicts the plaintiff's own testimony." *See Prosser*, 70 F.3d at 1008.

But *Prosser* does not mandate entry of summary judgment in the City's favor. First, *Prosser*'s expansion of the sham affidavit principle not been adopted in the Seventh Circuit, and depended in part upon considerations not present here. *See id.* (noting that the plaintiff's own testimony was contradictory, that the defendant's testimony was speculative, and that "no reasonable jury could return a verdict for [the plaintiff] based on [the witness's] testimony"). For this reason, at least one other circuit declined to expand on *Prosser*. *See Nelson v. City of Davis*, 571 F.3d 925, 929 (9th Cir. 2009) ("The rationale underlying the sham affidavit rule is that a party ought not be allowed to manufacture a bogus dispute with *himself* to defeat summary judgment. That concern does not necessarily apply when the dispute comes from the sworn deposition testimony of another witness.") (citing *Lane v. Celotex Corp.*, 782 F.2d 1526, 1531 (11th Cir. 1986)).

But more importantly, even if this court were to adopt *Prosser* in principle, here the three discrepancies between Flood and Carey's testimony that the City highlights are not inherently at odds. At the summary judgment stage, "where each party's testimony relays a different version of the facts, we must view those facts in the light most favorable to the party opposing the motion." *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003). In addition, the court draws all reasonable inferences in the non-movant's

favor. *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009). When reasonable inferences are drawn in Flood's favor, it is clear that issues of material fact exist which preclude summary judgment. For instance, the City complains that Flood denies he committed any of the traffic violations or crimes described by Carey, but in his response Flood cites to Carey's version of the encounter, where Carey says that Flood committed traffic violations and pointed a gun at him. It would be reasonable to infer, however, that Flood does not know or believe that he committed any traffic violation and that Carey mistakenly believed that he saw a gun. Likewise, the City points to Flood's denial that Carey identified himself as a police officer or showed his badge, followed by Flood's citation to Carey's testimony that Carey did so. But viewed in the light most favorable to Flood, it is reasonable to infer that Flood simply did not notice the badge or hear the announcement. Finally, the City points to the dispute over whether Carey ever pointed a gun while on the roadway. Again, this is a question of Flood's perception. When viewed in a light most favorable to Flood, the differences between Flood and Carey's testimony merely underscore that questions of material fact exist. The court will not grant summary judgment on this basis. *See Scott v. Public Sch. Retirement Sys. of Miss.*, 764 F. Supp. 2d 1151, 1165 (W.D. Mo. 2011) (refusing to apply the *Prosser* rule where the defendants failed to identify any "clearly inconsistent positions" held by the plaintiffs).

**B. Flood's § 1983 Claims (Counts I-IV)**

In order to prevail on his § 1983 claims, Flood must prove (1) that he was deprived of a constitutional right, and (2) that the deprivation was caused by a person or persons acting under color of state law. *See Cruz*, 579 F.3d at 843-44. Here, the City focuses entirely upon whether Carey was acting under color of state law. "An action is

7

taken 'under color of state law' if it involves a '[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 515-16 (7th Cir. 2007) (quoting *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) (alteration in original)). In the case of a police officer, "[w]hether a particular action was under color of state law depends 'largely on the nature of the specific acts the police officer performed, rather than on merely whether he was actively assigned at the moment to the performance of police duties.'" *Id.* (quoting *Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1995)). For instance, while the "mere assertion" that one is a police officer does not necessarily mean that one acts under color of state law, *see Gibson v. City of Chicago*, 910 F.2d 1510, 1516 (7th Cir. 1990), an off-duty officer may be acting under color of state law if he is in uniform and displaying a badge, *see United States v. Christian*, 342 F.3d 744, 751 (7th Cir. 2003).

When the incident in question took place, Carey had been off duty for many hours, he was driving his personal vehicle outside of his precinct, and he was under the influence of alcohol. On the other hand, Carey testified that he followed Flood in order to effect Flood's arrest after observing Flood commit various crimes. Carey also testified that he announced himself as a police officer, displayed his badge, and pulled a weapon (albeit his personal gun) on Flood as part of his attempt to effect that arrest. On summary judgment, the "essential inquiry" is whether there is a triable issue of fact concerning whether Carey's actions "related in some way to the performance of a police duty." *Gibson*, 910 F.2d at 1517. In light of disputed facts set forth above, the court cannot categorically say that Carey was not acting under color of state law. This remains a

question for the jury as factfinder. For these reasons, the City's motion for summary judgment is denied as to Flood's § 1983 claims against Carey in Counts I-IV.[4]

**C. Flood's *Monell* and Negligence Claims (Counts V and VII)**

In Count V, Flood arguably pleads a *Monell* claim by stating that various unknown police officers "utilized customary practices of [the City]" in violating his constitutional rights under § 1983. *See Monell*, 436 U.S. at 690-91. To establish *Monell* liability, Flood "must produce evidence of (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the final force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Lewis v. City of Chi.*, 496 F.3d 645, 656 (7th Cir. 2007) (quoting *Phelan v. Cook County*, 463 F.3d 773, 789 (7th Cir. 2006)). Here, the City met its initial burden by arguing generally that Carey's actions were not in conformance with police procedures. *See Keri*, 458 F.3d at 627-28 ("A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and . . . . may discharge its 'initial responsibility' by simply 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case.") (citation omitted). Flood has not come forward with any evidence of a policy or widespread practice that causes a constitutional deprivation, nor has he even alleged that a person with final policymaking authority was involved. Because he has not come forward with any evidence to support

---

[4] Count IV does not make it clear whether Flood seeks to hold the City liable for Flood's actions under § 1983, but "[u]nder § 1983, there is no respondeat superior liability." *Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002). Summary judgment is granted in favor of the City as to any such claims.

his *Monell* claim, the court grants summary judgment for the City as to Count V. *See Palka v. City of Chi.*, --- F.3d ----, 2011 WL 4921385, at *4 (7th Cir. 2011) (affirming a grant of summary judgment where the plaintiff had no evidence to support his *Monell* claim against the City).

Flood has the same problem in Count VII, where he alleges that the City was negligent in providing 911 emergency services. The City met its initial burden by arguing that Flood could not succeed on this claim, and Flood did not respond. As there are no facts in the record to support Flood's negligence claim against the City, the court grants summary judgment on Count VII. *See Keri*, 458 F.3d at 627.

**D. Flood's State Law Tort Claims (Counts IV, VI, and VIII)**

Counts VI and VIII include allegations of assault and intentional infliction of emotional distress against the City, respectively. In addition, a liberal reading of Count IV indicates that Flood alleges false arrest, false imprisonment, assault, and intentional infliction of emotional distress against the City. As previously noted, Flood dismissed all unnamed officers, and he focuses solely upon Carey's behavior in his response. Therefore, the court understands him to proceed on a *respondeat superior* theory against the City for Carey's acts. In Illinois, "an employer is liable for an intentional tort committed by its employee only if the tort was in furtherance of his employment"; if the intentional tort falls outside of the scope of his employment, the employer has no liability. *Doe v. City of Chi.*, 360 F.3d 667, 670 (7th Cir. 2004). Here, the City argues that Flood cannot prevail, because Flood cannot establish that Carey's acts fell within the scope of his employment.

Summary judgment "is generally inappropriate when scope of employment is at issue. Only if no reasonable person could conclude from the evidence that an employee was acting within the course of employment should a court hold as a matter of law that the employee was not so acting." *Pesek v. Marzullo*, 566 F. Supp. 2d 834, 844 (N.D. Ill. 2008) (quoting *Bagent v. Blessing Care Corp.*, 862 N.E.2d 985, 991 (Ill. 2007)). Here, the court is not equipped to resolve the issue of Carey's tort liability, which makes it difficult to gauge the extent, if any, of the City's liability. *See Doe*, 360 F.3d at 673 (in the context of indemnity, noting that "[t]he issue of the City's responsibility for the torts of its police officers is a difficult one that the district judge should not have attempted to resolve before the actual facts bearing on the issue were determined"). In any event, even assuming *arguendo* that Carey is liable for these intentional torts, a genuine issue of material fact exists as to whether Carey was acting within the scope of his employment. Carey claims he was trying to arrest Flood in an effort to enforce the law, which arguably indicates a purpose to serve his employer. Certainly a reasonable jury could conclude that Carey was motivated in part to serve the City in committing the tort(s). Thus, the court denies summary judgment as to Counts IV, VI, and VIII.

## IV. Conclusion

For the reasons stated above, the court grants summary judgment as to Counts V and VII, and denies summary judgment as to the remaining counts.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: November 21, 2011